[990 NYS2d 498]

ARIE GENGER et al., Appellants-Respondents, v SAGI GENGER et al., Respondents-Appellants, and DALIA GENGER et al., Respondents.

First Department, July 24, 2014

272

*Mitchell Silberberg & Knupp LLP*, New York City (*Paul D. Montclare* and *Lauren J. Wachtler* of counsel), for Arie Genger, appellant-respondent.

*Zeichner Ellman & Krause LLP*, New York City (*Yoav M. Griver* and *Bryan D. Leinbach* of counsel), and *Wachtel Missry LLP*, New York City (*William Wachtel* and *Elliot Silverman* of counsel), for Orly Genger, appellant-respondent.

*Morgan, Lewis & Bockius LLP*, New York City (*John Dellaportas, Nicholas Schretzman* and *Mary C. Pennisi* of counsel), for Sagi Genger and another, respondents-appellants and The Sagi Genger 1993 Trust, respondent.

*Pedowitz & Meister, LLP*, New York City (*Robert A. Meister* and *Marisa Warren* of counsel), for Dalia Genger, respondent.

*Judith Lisa Bachman*, New City (*Judith Bachman* of counsel), for Rochelle Fang, respondent.

## OPINION OF THE COURT

FREEDMAN, J.

This case is one of a number arising from the protracted battle between plaintiff Arie Genger (Arie) and a group of investors for control of Trans-Resources, Inc. (TRI), a Delaware corporation that manufactures and distributes fertilizer. The facts have been set forth in detail in prior opinions (*see e.g. Glenclova Inv. Co. v Trans-Resources, Inc.*, 874 F Supp 2d 292, 295-300 [SD NY 2012]; *Genger v TR Invs., LLC*, 26 A3d 180, 182-189 [Del 2011]). A summary of the relevant facts is as follows: In 1985, Arie founded TRI, which until 2001 was a wholly-owned subsidiary of a holding company, TPR, all of whose stock was directly owned by or held in trust for Arie, his wife Dalia, his son Sagi, and his daughter Orly. Arie owned 51% of the TPR stock and thereby controlled TRI. The remainder of TPR's stock was held by a limited partnership, the interests in which were divided between Dalia and separate trusts established for Sagi and Orly.

By 2001, TRI was facing insolvency, and Arie approached a close friend, defendant Jules Trump, about a capital investment. Trump and his brother, defendant Eddie Trump, organized a group of investors which are collectively known in this litigation as the "Trump Group." In a transaction which closed in March 2001, two Trump Group entities purchased most of TRI's debt obligations, and in exchange received 47.15% of TRI's stock from TPR. Arie remained the majority shareholder of TPR, which still held 52.85% of the TRI stock, and accordingly Arie still controlled TRI.

The stockholders agreement among the investors, TPR, and TRI, which governed the March 2001 transaction, contained provisions to protect the Trump Group's investment, including representation on TRI's board and veto rights. Most important, the stockholders agreement restricted any future transfer of TRI stock. Under the agreement, a party could only transfer TRI stock to a designated list of persons and entities, unless the transferor first gave prior written notice to the other TRI shareholders, along with a right of first refusal. A share transfer that violated those conditions would be void, the shares would revert to TPR, and the non-selling TRI shareholders would have the right to purchase the invalidly transferred shares at their fair market value on the transfer date.

On October 26, 2004, after a lengthy and contentious divorce proceeding, Arie and Dalia Genger entered into a final marital settlement agreement in New York. In connection with the division of the Gengers' marital property, the settlement agreement provided that the TRI stock owned by TPR would be transferred to Genger family members and their trust instruments. In connection with the contemplated transfer, Arie represented in the settlement agreement that, except for TPR, no party's consent was required to transfer the TRI stock. As the Supreme Court of Delaware pointedly held in *Genger*, "[t]hat representation [in the settlement agreement] was false" because under the 2001 shareholders agreement the consent of the Trump Group signatories was needed (26 A3d at 184).

The marital settlement agreement also required the trustees of the children's trusts to give Arie irrevocable lifetime proxies to vote the TRI shares transferred to those trusts. It was intended that, through the proxies, Arie would remain in charge of TRI through his control of the majority of the company's stock.

On October 29, 2004, in accordance with the divorce settlement, Arie transferred the TPR stock to Dalia, Sagi became

TPR's president and chief executive officer, and TPR transferred the TRI shares among Arie and the children's trusts. In violation of the 2001 shareholders agreement, Arie failed to notify the Trump Group parties of the TRI transfers and obtain their consent.

In 2008, TRI again ran into financial difficulties and approached the Trump Group for additional financing. During negotiations, the Trump Group for the first time learned of the 2004 TRI stock transfers. After negotiations broke down, the Trump Group sued TPR in federal court, claiming that the 2004 transfers violated the 2001 shareholders agreement and seeking to enforce their right to purchase the invalidly transferred TRI shares (*see Glenclova Inv. Co.*, 874 F Supp 2d at 292). Thereafter, Sagi, on behalf of TPR, reached a two-part settlement with the Trump Group. In the main agreement, TPR and the Sagi Trust agreed to sell the TRI shares the trust held (19.5% of the company's stock) to the Trump Group whether or not the 2004 transfers ultimately were judicially determined to be void. By acquiring the Sagi Trust shares, the Trump Group, which already owned 47.15% of TRI's shares, obtained a majority of TRI's stock and control over the company.

The Trump Group and TPR also entered into a "Side Letter Agreement" giving the Trump Group the option to buy the TRI shares purportedly transferred to Arie and the Orly Trust in 2004. The Trump Group's rights under the side letter would be triggered only if the 2004 transfers were judicially determined to be void, and as a result the legal and beneficial ownership of the TRI shares reverted to TPR. The agreed-on purchase price per share for Arie's and the Orly Trust's stock, which the Trump Group did not need to gain control of TRI, was about 60% less than the price the Trump Group paid for the Sagi Trust stock.

In August 2008, the Trump Group, now TRI's majority shareholders, removed Arie as the company's director and took control of its board by designating and electing a majority of its members. Arie refused to recognize the Trump Group's authority, and thereafter the Trump Group filed suit against Arie in the Delaware Chancery Court for a determination pursuant to 8 Del Code Ann § 225 as to which stockholder group controlled TRI.

In a July 2010 opinion issued after trial, the Chancery Court found that, contrary to Arie's claim, the Trump Group had never "ratified" the 2004 transfers, and that they had acquired

the Sagi Trust TRI shares free of Arie's proxy, in accordance with the 2001 shareholders agreement. Accordingly, the Trump Group had obtained majority control over TRI (*TR Invs., LLC v Genger*, 2010 WL 2901704, 2010 Del Ch LEXIS 153 [July 23, 2010, C.A. No. 3994-VCS]). In August 2010, the court issued a "Side Letter Opinion" holding that the 2004 transfers of TRI stock to Arie and the Orly Trust also were invalid, the stock had reverted to TPR, and, under the 2008 agreement between the Trump Group and TPR, the Trump Group had the option to buy the stock (*TR Invs., LLC v Genger*, 2010 WL 3279385, 2010 Del Ch LEXIS 170 [Aug. 9, 2010, C.A. No. 3994-VCS]).

On Arie's appeal from the Chancery Court rulings, the Delaware Supreme Court affirmed that the Sagi Trust shares that the Trump Group had purchased from TPR in 2008 were not subject to Arie's proxy (*Genger*, 26 A3d at 196). The court also affirmed the Chancery Court's finding that TPR was the record owner of the TRI shares invalidly transferred to Arie and the Orly Trust (*id.* at 200). However, the Delaware Supreme Court found that the Chancery Court lacked the power to declare who beneficially owned the shares transferred to Arie and the Orly Trust because it lacked personal jurisdiction over those parties (*id.* at 201-203).

Before the Delaware Supreme Court issued its decision, Arie and Orly, in her individual capacity and on behalf of the Orly Trust, brought this action against Sagi, the Sagi Trust, TPR, the Trump Group, Dalia, and Rochelle Fang, the trustee of the Sagi Trust. The gravamen of the claims is whether, as plaintiffs claim, Arie and the Orly Trust have a beneficial interest in the TRI shares that were invalidly transferred to them in 2004. Insofar as relevant to this appeal, plaintiffs assert the following claims:

The first cause of action, on behalf of Arie as against Dalia, seeks a declaratory judgment reforming the stipulation of settlement, apparently on the ground that Dalia received more of the marital assets than contemplated because Arie has been stripped of the TRI shares that were to be transferred to him.

The second, third, and fourth causes of action sound in equity. The second cause of action, on behalf of Arie, seeks a constructive trust against Sagi, TPR, and Sagi's Trust in connection with the TRI shares that were transferred to him in 2004 but then reverted to TPR in 2008. The third cause of action, on behalf of both plaintiffs, asserts claims for breach of fiduciary duty against Sagi and aiding and abetting breach of fiduciary

duty against TPR, Sagi's Trust, and Fang, in connection with their implementation of the 2008 settlement with the Trump Group. The fourth cause of action, also on behalf of both plaintiffs, is for unjust enrichment against Sagi, TPR, Dalia, and Sagi's Trust with respect to any money or other benefit they received from the reversion of the TRI shares to TPR in 2008.

Finally, the sixth cause of action, by both plaintiffs, is against TPR for breaching its 2004 agreement to transfer TRI shares to plaintiffs, and the seventh cause of action, by Arie, is against Sagi's Trust for breaching the 2004 agreement to provide Arie with an irrevocable proxy with respect to the trust's TRI shares.

■ Arie's claim for reformation of the divorce settlement is barred by Arie's unclean hands (*see generally National Distillers & Chem. Corp. v Seyopp Corp.*, 17 NY2d 12, 15-16 [1966]). Arie's loss of the TRI shares included in the marital assets was the result of his false representation that TPR could transfer the shares without the Trump Group's consent. Contrary to Arie's contention, unclean hands may be determined as a matter of law (*see e.g. Levy v Braverman*, 24 AD2d 430 [1st Dept 1965]).

■ Arie's claim for a constructive trust against Sagi, TPR, and Sagi's Trust fails because "the purpose of [a] constructive trust is prevention of unjust enrichment" (*Simonds v Simonds*, 45 NY2d 233, 242 [1978]), and, for the reasons set forth below, we are dismissing Arie's unjust enrichment claims.

■ The third cause of action, as narrowed on appeal, is for (1) breach of fiduciary duty against Sagi and (2) aiding and abetting breach of fiduciary duty against TPR and Fang (by both plaintiffs) and Sagi's Trust (by Orly). The court properly dismissed the aiding and abetting claims, but it should also have dismissed the other claims against Sagi because he was not a fiduciary of Arie and Orly Genger. According to plaintiffs, Sagi breached his fiduciary duty to them by causing TPR to sell Arie's, the Orly Trust's, and the Sagi Trust's TRI shares to the Trump Group. However, by then Sagi was already embroiled in litigation with his family members. While "[f]amily members stand in a fiduciary relationship toward one another in a co-owned business venture" (*Braddock v Braddock*, 60 AD3d 84, 88 [1st Dept 2009]), "a fiduciary relationship ceases once the parties thereto become adversaries" (*EBC I, Inc. v Goldman Sachs & Co.*, 91 AD3d 211, 215 [1st Dept 2011], *lv granted* 19 NY3d 810 [2012]).

■ Plaintiffs also contended that Sagi owed them a fiduciary duty as TPR's chief executive officer. However, as an officer of

TPR, Sagi's fiduciary duty was to the corporation and its stockholders (*see Foley v D'Agostino*, 21 AD2d 60, 66-67 [1st Dept 1964]). Arie has not owned TPR stock since he transferred his shares to Dalia in 2004. Orly's Trust never owned TPR stock; rather, the trust owned an interest in the limited partnership which held the stock.

Since Sagi did not owe a fiduciary duty to plaintiffs, the claims for aiding and abetting Sagi's purported breach are unavailing (*see Oddo Asset Mgt. v Barclays Bank PLC*, 19 NY3d 584, 594 [2012]; *Kaufman v Cohen*, 307 AD2d 113, 125 [1st Dept 2003]).

In the fourth cause of action, as narrowed on appeal, both plaintiffs allege that Sagi's Trust and TPR were unjustly enriched, Orly alleges that Dalia was unjustly enriched, and Arie alleges that Sagi was unjustly enriched. Supreme Court properly dismissed the claims against Sagi's Trust and Dalia, but it should also have dismissed the claims against TPR and Sagi.

Plaintiffs contend that Sagi's Trust was unjustly enriched because the per-share price it obtained from selling its TRI stock to the Trump Group was about 60% higher than the per-share price Arie and Orly's Trust received. However, the complaint explains the price difference: the Sagi Trust's TRI shares were worth more to the Trump Group because their purchase immediately gave them majority control of TRI. Moreover, the sale of the Sagi Trust's shares was guaranteed, whereas the sale of Arie's and the Orly Trust's shares was conditioned on the judicial determination that the 2004 transfers were invalid. Since Sagi did not owe a fiduciary duty to plaintiffs, he was not obligated to ensure Arie and the Orly Trust received the same per-share price as the Sagi Trust.

Orly fails to state an unjust enrichment claim against Dalia. Orly claims in her opening brief that her mother received "a disproportionate amount of the Genger family wealth," but even if that allegation is true, the amount Dalia received was the result of the stipulation of settlement in the divorce action, followed by the Delaware courts' holdings.

The doctrine of res judicata bars Arie's unjust enrichment claim against TPR. On March 1, 2013, the Delaware Chancery Court entered the final judgment order in *TR Invs., LLC v Genger* (2013 WL 787117 [Del Ch, Mar. 1, 2013, No. 6697-CS]), a plenary action in which Arie was a defendant. The court ruled that the Trump Group had the right to buy, from TPR, the TRI shares that had been improperly transferred to Arie in 2004

and that Arie was not a record or beneficial TRI stockholder. The court also held that the escrowed proceeds of the Trump Group's purchase were to be released to TPR. Arie did not appeal from the final judgment order, which has preclusive effect on Arie's claims here.

■ Orly's unjust enrichment claim against TPR is dismissed. The complaint acknowledges that, after the Orly Trust's TRI shares reverted to TPR and were sold to the Trump Group, the sale proceeds were placed in escrow. Accordingly, Orly does not allege that TPR was unjustly enriched by receiving or retaining a benefit from selling the TRI shares (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 182 [2011]).

Moreover, under the 2008 agreement between TPR and the Trump Group, the sale could only take place after a judicial determination that TPR is the record and beneficial owner of the Orly Trust's TRI shares. When the complaint was filed, it had only been determined that TPR was the shares' record owner, but the Delaware Chancery Court has now also ruled that TPR is the shares' beneficial owner (stipulation and proposed order of dismissal, *Genger v TR Invs., LLC* [Del Ch, Aug. 30, 2013, C.A. No. 6906-CS]).

■ Arie's unjust enrichment claim against Sagi fails because Sagi's Trust, and not Sagi personally, received the proceeds of the sale of the Sagi Trust's TRI shares. While Arie contends that Sagi is the alter ego of the trust, "[t]here is no authority for applying, by analogy, a theory of 'piercing the corporate veil' to disregard the form of a trust, when the trust was not formed for an illegal purpose and there is the requisite separation between beneficiary and trustee" (*National Union Fire Ins. Co. of Pittsburgh, Pa. v Eagle Equip. Trust*, 221 AD2d 212, 212 [1st Dept 1995]).

■ In the sixth cause of action, both plaintiffs allege that, by settling with the Trump Group in 2008, TPR breached the 2004 agreement that governed the transfer of its TRI shares to Arie, Orly's Trust, and Sagi's Trust. Arie contends that the agreement's purpose was to ensure that he would maintain voting control over the TRI shares for the rest of his life. But nothing TPR did or did not do caused Arie to lose his voting rights in the TRI shares. Rather, Arie lost the voting rights by causing TPR to transfer the TRI shares without obtaining the Trump Group's consent, which, as the Delaware courts have found, made the proxies unenforceable.

■ Orly contends that TPR's 2008 sale of the Orly Trust's TRI shares violated its contractual duty under the 2004 transfer

agreement to take necessary actions "to carry out the purpose" of the transfer to the trust. However, Orly fails to state a claim for breach of contract because she does not allege that TPR's nonperformance caused damages (*see Elisa Dreier Reporting Corp. v Global NAPs Networks, Inc.*, 84 AD3d 122, 127 [2d Dept 2011]). Any damage that the Orly Trust incurred was the result of Arie's invalid transfer of the TRI stock without the Trump Group's consent. Orly cannot identify any action TPR could have taken to carry out the purpose of the 2004 agreement once the Trump Group declared a breach of the 2001 stockholders agreement and successfully sued TPR to set aside the transfer to the Orly Trust.

Finally, on appeal, Arie claims that the seventh cause of action alleges that Sagi's Trust breached a so-called back-up voting trust agreement. However, the seventh cause of action actually alleges that Sagi's Trust breached a separate agreement, the so-called 2004 voting trust agreement. Arie may not amend his complaint via his appellate brief. Even if we were to consider this new claim, we would find it unavailing. There is no evidence that Arie and Sagi's Trust ever executed the back-up voting trust agreement; the record contains only an unsigned form of the agreement.

We have considered the parties' remaining arguments, including that *Genger v TR Invs., LLC* should not be given preclusive effect as against Arie, that Orly lacks standing to bring claims on behalf of her trust, that all claims against Sagi's Trust should have been dismissed because plaintiffs did not sue its current trustee, and that plaintiffs' unjust enrichment claims are barred by the existence of express contracts, and find that they do not warrant further modification of the January order.

Accordingly, the order of the Supreme Court, New York County (Barbara Jaffe, J.), entered January 2, 2013, which, to the extent appealed from as limited by the briefs, granted in part and denied in part the motions of defendants Sagi Genger, TPR Investment Associates, Inc. (TPR), the Sagi Genger 1993 Trust (the Sagi Trust), Dalia Genger, and Rochelle Fang to dismiss the third amended and supplemental complaint pursuant to CPLR 3211 and 1003, should be modified, on the law, to dismiss the breach of fiduciary duty claim against Sagi and the unjust enrichment claims against Sagi and TPR, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing all claims against Sagi. The purported appeal from the order of the same court and Justice, entered July 11, 2013,

which declined to sign the order to show cause of plaintiff Arie Genger, should be dismissed, without costs, as taken from a nonappealable order, and as the pertinent issues therein were previously decided in the context of a motion made to this Court (2013 NY Slip Op 82559[U] [Aug. 20, 2013]).

MAZZARELLI, J.P., ACOSTA, RICHTER and CLARK, JJ., concur.

Order, Supreme Court, New York County, entered January 2, 2013, modified, on the law, to dismiss the breach of fiduciary duty claim against Sagi and the unjust enrichment claims against Sagi and TPR, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing all claims against Sagi. Purported appeal from order, same court, entered July 11, 2013, dismissed, without costs.