Epiphany Community Nursery Sch. v Levey (2019 NY Slip Op 00842)





Epiphany Community Nursery Sch. v Levey


2019 NY Slip Op 00842


Decided on February 5, 2019


Appellate Division, First Department


Singh, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Judith J. Gische
Peter Tom
Cynthia S. Kern
Anil C. Singh,JJ.


654655/16 6695 

[*1]Epiphany Community Nursery School, Plaintiff-Appellant,
v
Hugh W. Levey, et al., Defendants-Respondents.



Plaintiff appeals from the order of the Supreme Court, New York County (Shirley W. Kornreich, J.), entered August 7, 2017, which granted defendants' motions to dismiss the complaint as against them pursuant to CPLR 3211(a)(5).




Loeb & Loeb, LLP, New York (John A. Piskora, Jason R. Lilien and Helen Gavaris of counsel), for appellant.
Harter Secrest & Emery LLP, Rochester (Peter H. Abdella, Samantha A. Maurer, Brian M. Feldman and Lauren R. Mendolera of counsel), for Hugh W. Levey, Claire Gruppo, Gruppo, Levey & Co., Gruppo, Levey Holdings Inc., January Management, Inc., and Frog Pond Partners L.P., respondents.
Woods Oviatt Gilman LLP, Rochester (Brian J. Capitummino of counsel), for Davie Kaplan CPA, P.C, respondent.



SINGH, J.


There are two central issues on this appeal. The first involves the application of the statute of limitations. The second is whether plaintiff has pleaded the element of justifiable reliance to support its cause of action sounding in fraud pertaining to unauthorized bank transfers made by defendants between 2007 and 2013. We find the fraud claim relating to the bank transfers is not time-barred and that justifiable reliance has been sufficiently pleaded. Accordingly, we reinstate plaintiff's fraud claims relating to the bank transfers.
The facts are taken from plaintiff Epiphany Community Nursery School's (Epiphany) complaint. For the purposes of defendants' motion to dismiss we "accept as true the facts as alleged in the complaint [and]. . . accord plaintiffs the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]).
In 1973 Wendy Levey (Wendy) married defendant Hugh Levey (Hugh). Two years later Wendy founded Epiphany, a not-for-profit corporation that operates a kindergarten and nursery school on the Upper East Side of Manhattan.
Hugh is an investment banker with an undergraduate degree from Yale University and a M.B.A. from Harvard. Hugh and defendant Claire Gruppo co-founded defendant Gruppo Levey & Co. (GLC), a small investment banking firm that provides strategic advice and private capital raising services to businesses, financial sponsors and management teams throughout the United States. Defendant Gruppo, Levey Holdings Inc. (GLH) is GLC's parent company, and defendant Frog Pond Partners L.P. (Frog Pond) is a limited partnership owned indirectly by Hugh and Gruppo. Of this group, all but Hugh are the "collateral defendants." Defendant Davie Kaplan CPA, P.C. (Davie Kaplan) was an outside auditor for Epiphany from 2010 to 2012.
The complaint alleges two sets of fraudulent acts. These acts were allegedly uncovered in a matrimonial action between Wendy and Hugh that was settled in October 2016. Wendy and Hugh are now divorced.
The first series of fraudulent acts occurred between 2002 and 2003 when Hugh induced Epiphany to sell its extracurricular programs to nonparty Magic Management LLC (Magic) for an unreasonably low price. At that time, Hugh had a 100% ownership interest in defendant January Management, Inc., general partner of nonparty January Partners, L.P., which was the sole member of Magic.
Pursuant to an asset purchase agreement dated February 12, 2003, Epiphany sold its extracurricular programs to Magic for $300,000, $30,000 of which was paid in cash and the remaining $270,000 was to be paid pursuant to a promissory note payable over 10 years in installments of $27,000, plus interest. Magic also agreed to pay monthly rent to use Epiphany's facilities. Hugh claimed that although Magic occupied less than 10% of Epiphany's space, Magic's rent would be $481,026. Magic's rent was represented to be more than $100,000 above Epiphany's rent for the building.
Wendy, Epiphany's Executive Director, did not have a financial background. She believed it was in the school's best interest to have someone with Hugh's financial expertise to assist with Epiphany's financial affairs. Wendy signed the asset purchase agreement on Epiphany's behalf without obtaining her own appraisal or verifying whether Magic paid the school what it owed.
The complaint alleges that the $300,000 purchase price was based on a fraudulent valuation commissioned by Hugh, which was "substantially inaccurate." By applying false figures, Hugh allegedly reduced the purchase price by $1.5 million. The complaint further alleges that if the valuation had been properly calculated the purchase price would have exceeded $1.8 million.
In addition, Magic failed to pay rent or the amount owed on the promissory note. The complaint alleges that Hugh manipulated Epiphany's corporate and financial records to hide Magic's failure to pay.
The second set of fraudulent acts allegedly took place between 2007 and 2013. Hugh made unauthorized transfers of over $5.9 million from Epiphany's bank accounts to himself and some of the collateral defendants by linking the bank accounts to his private banking portfolio. Hugh, with the assistance of Davie Kaplan, falsely recorded these transfers in Epiphany's general ledgers as "loans." However, there were no documents to memorialize these "loans." Nor were [*2]any loan payments ever made. The "loans" were subsequently characterized as "other receivables." At the end of each year, the other receivables were offset by fake charges Epiphany owed GLC or GLH for "consulting fees" and "lease commissions."
In September 2010, Hugh allegedly arranged for his long-time personal accountant, David Pitcher, who was employed by defendant Davie Kaplan to serve as Epiphany's outside auditor. Davie Kaplan delivered 2010, 2011, and 2012 audit reports. Davie Kaplan also performed an audit for fiscal year 2013 but it did not issue a 2013 audit report.
Epiphany commenced this action on August 31, 2016. It alleges 13 causes of action, including: (1) fraud by Hugh and Davie Kaplan; (2) aiding and abetting fraud by collateral defendants and Davie Kaplan; (3) breach of fiduciary duty by Hugh; and (4) aiding and abetting breach of fiduciary duty by the collateral defendants and Davie Kaplan.
Defendants moved to dismiss the complaint. Supreme Court granted the motion and dismissed the complaint with prejudice. The motion court held that the first set of fraud claims were time-barred. The second set of fraudulent acts constituted conversion and were also time-barred. Supreme Court also found that the nonfraud claims sounded in accounting malpractice and were time-barred as well. Epiphany appealed.
A fraud claim must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it" (CPLR 213[8]).
On a motion to dismiss a fraud claim based on the two-year discovery rule, a defendant must make a prima facie case that a plaintiff was on inquiry notice of its fraud claims more than two years before it commenced the action, in this case, before August 31, 2014. The burden then shifts to the plaintiff to establish that even if it had exercised reasonable diligence, it could not have discovered the basis for its claims before that date (see Berman v Holland & Knight, LLP, 156 AD3d 429, 430 [1st Dept 2017]; Aozora Bank, Ltd. v Deutsche Bank Sec. Inc., 137 AD3d 685, 689 [1st Dept 2016]).
"The issue of when a plaintiff, acting with reasonable diligence, could have discovered an alleged fraud . . . involves a mixed question of law and fact, and, where it does not conclusively appear that a plaintiff had knowledge of facts from which the alleged fraud might be reasonably inferred, the cause of action should not be disposed of summarily on statute of limitations grounds. Instead, the question is one for the trier-of-fact"
(Berman, 156 AD3d at 430 [internal quotation marks omitted]; see also Sargiss v Magarelli, 12 NY3d 527, 532 [2009]; Trepuk v Frank, 44 NY2d 723, 725 [1978]).
Turning first to the sale of Epiphany's extracurricular programs in 2002 and 2003, the Supreme Court properly dismissed as time-barred this branch of the fraud claim. The action was commenced more than six years after this cause of action accrued. Accordingly, to be timely, the action must have been brought within two years from the time that Epiphany discovered the alleged fraud, or from when it could have discovered it in the exercise of reasonable diligence.
We find that Epiphany could have discovered the alleged fraud when Wendy, as Epiphany's Executive Director, signed the asset purchase agreement on Epiphany's behalf in 2003. She signed it without obtaining her own appraisal. Further, Epiphany did not question the disproportionally high rent, which was the basis for the undervaluation of the asset. Nor did Epiphany verify whether Magic paid the rent due or made payments on the promissory note (see Aozora Bank, Ltd, 137 AD3d at 689; Gutkin v Siegal, 85 AD3d 687, 688 [1st Dept 2011]).
As for the second set of fraudulent acts relating to the unauthorized bank transfers that occurred between 2007 and 2013, we find that the unauthorized transfers sound in fraud, not conversion and that the fraud claim is timely under the two-year discovery rule.
The complaint alleges that Hugh — with assistance from Davie Kaplan's employee, David [*3]Pitcher — devised a fraudulent scheme to intentionally falsify the financial statements and books and records of Epiphany and kept the knowledge of these transfers from the school. Hugh made the alleged illicit and unauthorized transfers from Epiphany's bank accounts and fraudulently concealed them by falsely designating the entries in Epiphany's books and records as "loans", by falsely manipulating Epiphany's books and records to convert the purported "loans" into "other receivables", and offsetting the loans by falsely claiming monies owed by Epiphany for consulting services that were never provided.
Since the acts were allegedly concealed from Epiphany, defendants have not established a prima facie case that the school was on notice of the unauthorized transfers. Moreover, even if defendants have established a prima facie case, it does not conclusively appear that Epiphany had knowledge of the facts from which the fraud could reasonably be inferred.
Furthermore, the complaint sufficiently states a cause of action sounding in fraud. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]). In contrast, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006]).
Here, the alleged manipulation is not simply Hugh controlling or interfering with funds that rightfully belong to Epiphany. Rather, the claim is that defendants knowingly made material representations of fact relating to Epiphany's books and records that were false.
The dissent takes issue with plaintiff's failure to allege that Wendy, as founder and director, or other agents of the school justifiably relied upon Hugh's misrepresentations. It views this omission as a failure to plead fraud with particularity pursuant to CPLR 3016(b).
We disagree. CPLR 3016(b) requires that "the circumstances constituting the wrong shall be stated in detail." The statutory provision is satisfied when the facts suffice to permit a "reasonable inference" of the alleged misconduct (see Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 492 [2008]; see also Eurycleia Partners, LP, 12 NY3d at 559; Credit Suisse Fin. Corp. v Reskakis, 139 AD3d 509 [1st Dept 2016]). Further, "in certain cases, less than plainly observable facts may be supplemented by the circumstances surrounding the alleged fraud" (Pludeman, 10 NY3d at 493). This requirement is to inform a defendant of the acts that the plaintiff is complaining about (id. at 491; see also DDJ Mgt., LLC v Rhone Group LLC, 78 AD3d 442, 443 [1st Dept 2010]). Here, the complaint states in detail Hugh's fraudulent misconduct and meets the requirements of CPLR 3016(b).
Epiphany alleges that it justifiably relied on Hugh's "material misrepresentations and omissions based on his position as a director, his financial expertise, and the expectation that he would act solely in the interests of [Epiphany], its students, and faculty, consistent with his fiduciary obligations." The allegations in the complaint are not bare legal conclusions. Nor are they inherently incredible. Epiphany alleges that Wendy relied on Hugh's representations because of their familial relationship and his position as director of Epiphany. From the mid-1990s, Hugh began to involve himself in the financial matters of Epiphany. He became a member of the Board of Directors and held the position until 2013. Wendy trusted her husband. He was an experienced investment banker who had consulted on multi-billion dollar transactions. She believed that Hugh would use his skills to further the financial interests of Epiphany. Wendy had no reason to believe that he would loot Epiphany's funds, treating it as one of his businesses. Epiphany alleges that Hugh's explanation for his conduct was that he had helped set up Epiphany and had a 50% interest in it.
The dissent's conclusion that Epiphany cannot prove that Wendy actually relied on the fraudulent ledger entries is an impermissible factual finding, not warranted on a pleading motion. [*4]Moreover, the dissent completely ignores the close familial relationship between Hugh and Wendy, which impacts on whether Wendy's reliance on Hugh properly managing Epiphany's finances was justifiable.
In determining whether justifiable reliance is sufficiently alleged, we consider two relevant circumstances: first, the existence of a relationship of trust or confidence and second, the superior knowledge or means of knowledge on the part of the person making the representation.
In Braddock v Braddock (60 AD3d 84, 89 [1st Dept 2009]), we held that since the plaintiff and the defendant were cousins, the plaintiff's reliance on the defendant's good faith "may be found to be reasonable even where it might not be reasonable in the context of an arms' length transaction with a stranger." We noted that "[f]amily members stand in a fiduciary relationship toward one another in a co-owned business venture" (id.; compare Castellotti v Free, 138 AD3d 198, 209 [1st Dept 2016]; Genger v Genger, 121 AD3d 270, 278 [1st Dept 2014]).
Here, the complaint alleges that Hugh went to great lengths to conceal the unauthorized transfers and therefore, Epiphany - and Wendy, in her capacity as Executive Director of Epiphany - could not have discovered the alleged fraud with reasonable due diligence [FN1]. In particular, Hugh "caused [Epiphany's] bank statements to be diverted to the offices of Gruppo Levy and GLH" so that his fraudulent scheme would not be discovered. He also allegedly initiated these transfers at meetings with the employees of Gruppo Levy and GLH, not Epiphany. Additionally, he recorded the transfers as loans on the books and records, before offsetting them by services that were allegedly not provided so that Epiphany would not be alerted to the transfers. The complaint alleges that Hugh and Davie Kaplan's actions prevented the public and government regulators from uncovering the fraud.
The dissent acknowledges that whether plaintiff's reliance was justifiable generally raises factual issues inappropriate for resolution on a motion to dismiss (see ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 25 NY3d 1043, 1045; Braddock, 60 AD3d at 88; Brunetti v Musallam, 11 AD3d 280, 281 [1st Dept 2004]; Knight Sec. v Fiduciary Trust Co., 5 AD3d 172, 173 [1st Dept 2004]).
The breach of fiduciary duty by Hugh as to the transfers between 2007 and 2013 should also be reinstated as "[t]he discovery accrual rule also applies to fraud-based breach of fiduciary duty claims" (Kaufman v Cohen, 307 AD2d 113, 122 [1st Dept 2003]; see also Yatter v William Morris Agency, 268 AD2d 335, 336 [1st Dept 2000]; Unibell Anesthesia P.C. v Guardian Life Ins. Co. of Am., 239 AD2d 248 [1st Dept 1997]).
The aiding and abetting fraud claim as against the collateral defendants should be reinstated (see Stanfield Offshore Leveraged Assets, Ltd v Metropolitan Life Ins. Co, 64 AD3d 472, 476 [1st Dept 2009], lv denied 13 NY3d 709 [2009] [the elements of an aiding and abetting claim include: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud"] [internal quotation marks omitted]).
Here, the complaint states with specificity that the collateral defendants had knowledge of the fraud, permitted discussions of the bank transfers to take place at the offices of GLC and GLH, that January Management was formed to facilitate the transfers, that Epiphany's bank [*5]statements were diverted to the offices of GLC and GLH so that the fraud would be concealed and that ultimately the transfers were made to the bank accounts of the collateral defendants.
However, the aiding and abetting breach of fiduciary duty claim against the collateral defendants should be dismissed as the allegations in the complaint are conclusory (see Kaufman, 307 AD2d at 125 ["a claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach"]). The defendants must have actual knowledge, and not constructive knowledge of the breach of fiduciary duty (id.).
Epiphany does not allege any facts in support of its claim that the collateral defendants aided and abetted the breach of fiduciary duty owed by Hugh. Instead, it merely states that the collateral defendants assisted, facilitated and accepted the bank transfers.
Finally, we affirm Supreme Court's dismissal of the fraud, aiding and abetting fraud and breach of fiduciary claims against Davie Kaplan as duplicative of Epiphany's untimely accounting malpractice claim (see Murray Hill Invs. v Parker Chapin Flattau & Klimpl, LLP, 305 AD2d 228 [1st Dept 2003] [affirming dismissal of fraud claim as duplicative of the untimely legal malpractice claim, and noting that it was asserted in an attempt to circumvent the legal malpractice limitations period]).
We have considered Epiphany's remaining arguments and find them unavailing.
Accordingly, the order of the Supreme Court, New York County (Shirley W. Kornreich, J.), entered August 7, 2017, which granted defendants' motions to dismiss the complaint as against them pursuant to CPLR 3211(a)(5), should be modified, on the law, to deny Hugh W. Levey's motion as to fraud and breach of fiduciary duty, and to deny the collateral defendants' motion as to the claims for aiding and abetting fraud for the bank transfers, and otherwise affirmed, without costs.
All concur except Friedman, J.P. and Tom, J. who dissent in part in an Opinion by Friedman, J.P.




FRIEDMAN, J.P. (dissenting in part)


I understand the majority's reluctance to affirm in its entirety Supreme Court's dismissal of this action on the ground of the statute of limitations. The complaint alleges that plaintiff, a not-for-profit corporation operating a preschool, was fleeced of millions of dollars by defendant Hugh W. Levey (Hugh), a financial professional who was, during the relevant period, the husband of nonparty Wendy Levey (Wendy), plaintiff's founder and (at the time) principal officer and director. Wendy allegedly entrusted plaintiff's financial management to Hugh from some point in the 1990s until 2013, when Hugh filed for divorce. Assuming the truth of the allegations of the complaint, as a court is required to do upon a CPLR 3211 motion to dismiss, Hugh's conduct with respect to plaintiff was reprehensible.
The majority reinstates the complaint to the extent it alleges that Hugh — acting in concert with, or aided and abetted by, certain of his codefendants — simply transferred large sums of money from plaintiff's bank account to the bank accounts of entities he controlled. These defalcations — the first of which allegedly occurred in 2007, and the last of which allegedly occurred during plaintiff's fiscal year that ended June 30, 2013 — were covered up by false accounting entries characterizing the withdrawals as "loans" that were completely offset by "fees" charged to plaintiff for fictional "services" purportedly provided by Hugh's entities. It is further alleged that the "loans" were then hidden under the category of "Other Receivables" on plaintiff's financial statements. In the majority's view, the fraud claim against Hugh based on these alleged withdrawals is governed by the six-year statute of limitations for fraud (CPLR 213[8]). The majority further finds, pursuant to that statute's provision that a claim may be [*6]asserted "two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it" (id.), that a factual issue exists as to whether the claim is timely with respect to all of the withdrawals, from 2007 to 2013. I respectfully disagree.
Plaintiff's allegations concerning Hugh's misappropriations from its bank account state a cause of action, not for fraud, but for conversion — a claim subject to a strict three-year statute of limitations that contains no discovery provision (CPLR 214[4]). Accordingly, plaintiff's claim is time-barred, since the three-year limitation period for conversion expired no later than June 30, 2016, two months before this action was commenced. Absent from the complaint is any well-pleaded allegation that any faithful agent of plaintiff — whether officer, director or employee — actually read or heard, much less relied upon, a false representation made by Hugh or any other defendant concerning the wrongful transfers [FN2]. True, the complaint alleges that plaintiff relied on Hugh personally to manage its financial affairs honestly and competently. But there is no allegation that any agent of plaintiff actually relied on Hugh's written misrepresentations — because no such agent is alleged ever to have read those misrepresentations.
Particularly noteworthy is the complaint's failure to allege that Wendy — plaintiff's founder and the director of its school — read or relied upon the alleged misrepresentations in plaintiff's books and records and financial statements. Presumably, the complaint does not allege reliance on Wendy's part because Wendy admits, in the affidavit she submitted in opposition to the motion to dismiss, that she did not become aware of Hugh's scheme until 2016, when it was uncovered by forensic accountants retained by plaintiff's counsel [FN3]. In the affidavit, Wendy does not say that she was misled about the transfers; she says that she was unaware of them. In addition, the record shows that Wendy testified at her deposition in the divorce case that it was not her practice even to review plaintiff's audit reports.
To be clear, while the false accounting entries and financial statements alleged in the complaint certainly constitute misrepresentations that could support a fraud cause of action, the complaint fails to identify any particular individual acting as plaintiff's agent who, at any point in time, read and relied on these misrepresentations. In the 36 pages and 172 paragraphs of the complaint, all that is alleged concerning the reception of the falsehoods in plaintiff's accounting records and financial statements is the unsubstantiated conclusion that plaintiff itself — a legal entity capable of acting only through real-world human agents — "justifiably relied" on the statements of Hugh. Specifically, the complaint alleges in pertinent part:
"83. [Plaintiff] justifiably relied on Hugh Levey's material misrepresentations and omissions based on his position as a director, his financial expertise, and the expectation that he would act solely in the interests of [plaintiff], its students and faculty, consistent with his fiduciary obligations."[FN4]
If plaintiff did, in fact, "justifiably rely" on the alleged misrepresentations, the identity of the agent or agents through whom plaintiff placed such reliance is information peculiarly within plaintiff's knowledge and must be pleaded with particularity under CPLR 3016(b). After all, if plaintiff cannot name any agent through whom it relied on the subject statements, how can it claim to have relied on those statements? Yet, the complaint offers only boilerplate to satisfy the reliance element of a fraud claim. This does not suffice to state a cause of action for fraud (see IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 140 [2009] [a complaint alleging that the defendant "attempted to deceive" the plaintiff, but failing to allege that the plaintiff "was actually duped," failed to state a fraud claim]; Cusack v Greenberg Traurig, LLP, 109 AD3d 747, 748 [1st Dept 2013] [no fraud claim was stated where the complaint "failed to allege that (the plaintiff) relied on (the alleged misrepresentation) to his detriment"]).
I recognize that (as the majority notes) "the question of what constitutes reasonable reliance is not generally a question to be resolved as a matter of law on a motion to dismiss" (ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 25 NY3d 1043, 1045 [2015]). The deficiency of the instant complaint, however, is that it fails to allege any reliance, reasonable or otherwise, by any identified human being acting on plaintiff's behalf. Logically, a complaint must allege with particularity that some natural person or persons (whether identified by name or by the function they performed) actually relied on a false statement before any question of the reasonableness or justification of such reliance can arise. Notwithstanding that the identity of any agent who relied on the misrepresentations would be information peculiarly available to plaintiff, and ignoring the requirement that fraud be pleaded with particularity (CPLR 3016[b]), the complaint sets forth only the legal conclusion that plaintiff — a legal entity that exists only on paper — somehow "relied" on defendants' misrepresentations. The complaint fails to allege even the position, whether with plaintiff or with an outside vendor, held by the person who, as plaintiff's agent, relied on Hugh's false statements. In my view, this does not state a cause of action for fraud. The allegations of misappropriations amount, rather, to a cause of action for conversion, which is, as the majority agrees, time-barred.
The majority asserts that I make an "impermissible factual finding" by reaching (in their words) the "conclusion that [plaintiff] cannot prove that Wendy actually relied on the fraudulent ledger entries." This is a distortion of my position. First, the question on a pleading motion is not what plaintiff can or cannot prove, but what plaintiff has alleged or has not alleged. To reiterate, what plaintiff has not sufficiently alleged is actual reliance, whether justifiable or not, by any particular person on the false statements in question — a matter peculiarly within plaintiff's knowledge. Indeed, plaintiff has not alleged that any faithful agent in its employ even [*7]read those false statements. The question of proof does not arise in the absence of a pleading that sufficiently alleges the matter to be proved. Further — putting aside the fact that (as previously discussed) Wendy has admitted under oath that she did not read Hugh's false statements (and thus could not have relied on them) — the complaint does not allege that she, or any other agent of plaintiff not complicit in the scheme, actually read and relied on the false statements.[FN5]
The majority emphasizes that Hugh's ability to perpetrate his despicable scheme depended upon Wendy's reliance — not on any particular false statement he made — but on Hugh personally, as her husband, as a director of plaintiff, and as a financial professional. In so doing, the majority only highlights the fact that what the complaint alleges is not common-law fraud (which requires reliance on some false representation) but Hugh's abuse of his position of trust, in which he operated free of oversight, to empty plaintiff's bank accounts — in other words, conversion. If the complaint alleged that Wendy had actually read Hugh's false statements, her familial relationship with him might well be relevant to determining the reasonableness of her reliance on his misrepresentations. But, again, it is not alleged that Wendy read the false accounting entries or financial statements.
The absence here of an allegation that Hugh's misrepresentations were actually read by any agent of plaintiff contrasts strikingly with Braddock v Braddock (60 AD3d 84 [1st Dept 2009]), a case the majority cites as support for the relevance of a familial relationship to the reasonableness of reliance. In Braddock, the complaint alleged that the plaintiff (an individual) relied on specific oral representations and promises made to him by the defendant, his cousin (see id. at 86-87). The complaint in this case does not identify any person who, while acting on behalf of plaintiff, actually read and relied on Hugh's misrepresentations. Thus, while Braddock is, in certain respects, teasingly similar to our case, that which distinguishes it points our case to the opposite result.
I further note that the fraud cause of action cannot be salvaged under the rubric of fraud by concealment or constructive fraud [FN6]. The plaintiff is required to have relied on some affirmative statement by the defendant to recover damages on a claim for constructive fraud (see Del Vecchio v Nassau County, 118 AD2d 615, 618 [2d Dept 1986] [in dismissing a constructive fraud claim by an infant plaintiff because the defendants "made no representations, false or otherwise, to (her)," the court noted that constructive fraud, unlike actual fraud, requires that "the parties (be) in a fiduciary or confidential relationship" but "the plaintiff need not prove actual knowledge of the falsity of the representation by the defendant"]; see also People v Credit Suisse [*8]Sec. (USA) LLC, 31 NY3d 622, 640 n 2 [Feinman, J., concurring]). The same requirement applies to a claim for fraud by concealment (see ACA Fin. Guar. Corp., 25 NY3d at 1044 ["To plead a claim for . . . fraudulent concealment, plaintiff must allege facts to support the claim that it justifiably relied on the alleged misrepresentations"]; P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 376 [1st Dept 2003] ["A cause of action for fraudulent concealment requires, in addition to the four . . . elements (of fraud, i.e., material misrepresentation of fact, scienter, reasonable reliance, and damages), an allegation that the defendant had a duty to disclose material information and that it failed to do so"]).
Given that the complaint fails to allege that any faithful agent of plaintiff actually relied on Hugh's alleged misrepresentations, I have no occasion to consider whether reliance on those misrepresentations, as alleged in the complaint, could have been justifiable. I note, however, that the majority mischaracterizes the complaint in describing the fraud, as alleged by plaintiff, as one that "could not have [been] discovered . . . with reasonable due diligence." In fact, the complaint alleges just the opposite. Paragraph 64 of the complaint, for example, in support of the claims against Davie Kaplan, states: "On their face, the consulting fees [used to offset the purported loans to Hugh's entities] were blatantly false, full of red flags, and would have been objected to by even the most novice of accountants, had the accountant been acting in the best interests of its client" (emphasis added). Thus, as alleged by the complaint, the scheme was effective, not because it was sophisticated (on the contrary, it was glaringly amateurish), but because it was never probed by any honest person with even the most basic competence in bookkeeping. As for the conclusory allegation that Hugh and his cohorts prevented "the public[] and government regulators from uncovering the fraud," the complaint does not allege that any regulators or representatives of the interested public ever investigated plaintiff's finances or would have been fooled by Hugh's flimsy artifice (as described by plaintiff) if they had. Presumably, plaintiff, with its responsible officers and directors entirely unaware of the scheme, failed to call the matter to the attention of competent legal counsel, much less the government or the public, until 2016. In this regard, I reiterate that Wendy, by her own admission, was not fooled by the scheme, but was simply unaware of it. Wendy further states that, once forensic accountants retained by plaintiff's counsel examined plaintiff's books and records in 2016, the scheme was uncovered.
The majority allows the fraud claim to go forward even as to defalcations committed more than six years before this action was commenced based on the provision of CPLR 213(8) extending the limitation period for fraud to two years from the time the fraud was discovered or could have been discovered with due diligence. Since, in my view, the claim is one for conversion, not fraud, and the three-year statute of limitations applicable to conversion claims (CPLR 214[4]) does not have a discovery provision, I have no occasion to consider what effect, if any, the discovery rule applicable to fraud claims would have on this action had plaintiff stated a legally sufficient cause of action for fraud. I note, however, that it is difficult to see how it can be said that Hugh's scheme could not have been discovered earlier, even "with due diligence," when the complaint specifically alleges that the fraudulent consulting fee entries used to offset the loans on plaintiff's books "would have been objected to by even the most novice of accountants." Nor would the diversion of plaintiff's bank statements to Hugh's offices have insulated the scheme from discovery, since due diligence certainly requires the review of bank statements as they are issued. If bank statements were not being delivered to plaintiff's offices, a diligent agent would have noticed that and taken steps to obtain the statements.
Because the cause of action against Hugh for breach of fiduciary duty is based on allegations of conversion, not of fraud, that claim is also barred by the three-year statute of limitations (see IDT, 12 NY3d at 139). Further, because the underlying claims for fraud and breach of fiduciary duty are untimely, the causes of action for aiding and abetting those torts are similarly time-barred. In this regard, while I concur with the majority's affirmance of the [*9]dismissal of the claims against the collateral defendants for aiding and abetting breach of fiduciary duty, I do not follow its logic in dismissing those claims while reinstating the claims against the same defendants for aiding and abetting fraud. Plaintiff contends that the same acts allegedly aided by the collateral defendants — Hugh's withdrawals from plaintiff's bank accounts — form the basis of both its fraud claim and its breach of fiduciary duty claim (although, in my view, plaintiff has not stated a claim for fraud). As previously stated, I concur with the majority's affirmance of the dismissal of the claims against Davie Kaplan, plaintiff's outside accounting firm, as untimely under the statute of limitations governing professional malpractice.
For all of the foregoing reasons, but especially because a party cannot rely on a representation of which it is unaware, I would affirm the order granting defendants' motions to dismiss the complaint in its entirety. In sum, the majority significantly alters the settled requirements for pleading a fraud cause of action by reinstating a fraud claim in which no human being is alleged to have received and actually relied upon the misrepresentations. The majority's motivation seems to arise from the familial relationship between Wendy and Hugh, but no fraud claim (as opposed to a conversion claim) can arise unless Wendy, or someone else acting on plaintiff's behalf, actually examined the documents setting forth the misrepresentations. Accordingly, while I concur with the majority to the extent it affirms the order appealed from, I respectfully dissent from its modification of that order to reinstate the portions of the complaint indicated in the decretal paragraph.
Order, Supreme Court, New York County (Shirley W. Kornreich, J.), entered August 7, 2017, modified, on the law, to deny Hugh W. Levey's motion as to fraud and breach of fiduciary duty, and to deny the collateral defendants' motion as to the claims for aiding and abetting fraud for the bank transfers, and otherwise affirmed, without costs.
Opinion by Singh, J. All concur except Friedman, J.P. and Tom, J. who dissent in part in an Opinion by Friedman, J.P.
Friedman, J.P., Gische, Tom, Kern, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 5, 2019
CLERK



Footnotes

Footnote 1: The dissent maintains that the complaint does not sufficiently plead a claim for fraud by concealment or constructive fraud. However, the complaint does not assert either cause of action. Rather, the concealment alleged in the complaint is pertinent to justifiable reliance. 

Footnote 2:It appears from the record that, during the relevant period, nonparties Evan Levey (the son of Hugh and Wendy) and Len Frattellone performed plaintiff's internal accounting functions, under Hugh's direction, as employees of one of Hugh's entities. For part of that time, Evan Levey was a member of plaintiff's board of directors. Plaintiff does not argue in its appellate briefs that any reliance by Evan Levey or Frattellone on the alleged misrepresentations could satisfy the reliance element of its fraud cause of action. In fact, plaintiff's reply brief takes the position that Evan Levey and Frattellone "were employed by Hugh Levey . . . and acted as his agents."

Footnote 3:Notably, Wendy admits that she was first told that the scheme (although not its full extent) had been uncovered in January 2016. Nonetheless, plaintiff waited another seven months, until the end of the following August, to commence this action.

Footnote 4:The complaint alleges that plaintiff "justifiably relied" on defendant Davie Kaplan, CPA, P.C. (Davie Kaplan), its auditor, in similarly conclusory terms. The majority correctly affirms the dismissal of the complaint as against Davie Kaplan, however, on the ground that all claims against the auditor are untimely under the three-year statute of limitations applicable to professional malpractice claims (CPLR 214[6]). I concur in this aspect of the majority's decision.

Footnote 5:Needless to say, for plaintiff to state a fraud claim, it would not be necessary for the complaint to allege that Wendy, in particular, was the agent who relied on Hugh's false statements. Rather, it would have sufficed for the complaint to allege that some particular agent — whether some other officer or employee of plaintiff, or a person working for an outside vendor engaged by plaintiff — relied on the statements. The complaint contains no such allegation.

Footnote 6:As the majority notes, the complaint does not explicitly set forth theories of fraud by concealment or constructive fraud. I nonetheless consider whether the facts alleged make out such a claim because the question on a motion to dismiss is whether the plaintiff has a claim, not whether the claim has been properly characterized.